James HOAY *v.* STATE of Arkansas

CA CR 00-1198 55 S.W.3d 782

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered September 26, 2001

*Blackmon-Solis & Moak, LLP*, by: *DeeNita D. Moak*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Appellant, James Hoay, pleaded guilty to the crime of possession of methamphetamine and was sentenced to eighteen months in the Arkansas Department of Correction to be followed by five years' suspended imposition of sentence. Pursuant to Rule 24.3(b) of the Arkansas Rules of Criminal Procedure, he appeals from the circuit court's denial of his motion to suppress evidence seized from him, arguing that the court erred in concluding that the police had reasonable suspicion to stop his vehicle. Further, he argues that because he was arrested on an invalid arrest warrant after the stop, the items seized in the search incident to that arrest should be suppressed. We agree with appellant's latter argument and reverse and remand.

Jeff Midgett of the Clay County Sheriff's Department testified that on July 9, 1999, during daylight hours, he followed a gray Chevrolet pickup truck for approximately two miles as it traveled south on Highway 135. While following the truck, he saw the truck move to the right of the fog line, cross the center line twice, and then drive to the right of and over the fog line for approximately one-half to one mile. Midgett testified that he stopped the truck because he believed that the driver could have been under the influence of intoxicants or a controlled substance.

As the truck pulled to the side of the road, Midgett saw the driver "doing a lot of frequent moving around, bending over . . . toward the floorboard. . . ." Midgett walked up to the driver's side of the truck and asked appellant, the sole occupant of the truck, for his license. Midgett did not "smell any odor of alcohol at that time." Through his own dispatcher, Midgett checked appellant's license with NCIC, which, according to Midgett, is a nationwide list of persons who have felony warrants for arrest, and found that a warrant for appellant's arrest had been issued in Greene County. Midgett then contacted two different dispatchers for Greene County, one by telephone and one by radio, and Midgett was informed by both dispatchers that they possessed an arrest warrant for appellant based on his failure to appear on a felony charge for possession of a controlled substance.

Midgett asked appellant to step out of his truck because he had a warrant for his arrest. After Midgett handcuffed appellant, he saw a bulge in appellant's sock near his ankle. He removed from the

sock a clear plastic bag containing a smaller plastic bag that contained a rock-like substance he believed to be methamphetamine.

Midgett testified that this search was incident to appellant's arrest on the warrant, and he arrested appellant only on the warrant. Midgett also testified that if it had not been for the warrant, he would have had appellant perform a field-sobriety test because appellant's speech was slurred.

Appellant, however, introduced a docket sheet showing that the arrest warrant was issued on February 11, 1999, and set aside on April 20, 1999. Midgett testified that he did not know that the warrant was set aside, that this was his typical method for verifying warrants, and that he had no problems with Greene County in the past, as he had made several felony and misdemeanor arrests on Greene County warrants.

After hearing the arguments of counsel on appellant's motion to suppress, the court determined that because of appellant's erratic driving, Midgett properly stopped appellant's truck. The court further determined that in making the arrest on the invalid arrest warrant and searching appellant incident to that arrest, Midgett acted in good faith. Consequently, the court denied appellant's motion to suppress.

First, appellant argues on appeal that Midgett lacked reasonable suspicion to stop his truck, and therefore, the evidence seized during the search of his clothing should be suppressed. In reply, the State argues that appellant's driving gave Midgett reasonable suspicion to believe that he was driving while intoxicated.

[1, 2] We conclude that, based on the totality of the circumstances, Midgett had reasonable suspicion to stop appellant for driving while intoxicated. Pursuant to Rule 3.1 of the Arkansas Rules of Criminal Procedure, "[a] law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct." In reviewing the denial of a motion to suppress, this court makes an independent examination based on the totality of the circumstances. *Frette v. City of Springdale*, 331 Ark. 103, 108, 959 S.W.2d 734, 736 (1998). We

conclude that appellant's crossing of the center line and fog line provided reasonable suspicion to stop appellant to determine whether he was driving while intoxicated. *Piercefield v. State*, 316 Ark. 128, 133, 871 S.W.2d 348, 351 (1994).

Second, appellant contends that the substance seized should be suppressed because he was arrested on an invalid arrest warrant, and therefore, the search was not incident to a lawful arrest. In response, the State argues that the good-faith exception to the exclusionary rule applies, thus saving from suppression the evidence seized during the search incident to his arrest.

 We conclude that the State's failure to present evidence regarding why the invalid warrant remained outstanding, particularly, whether it was the fault of the police or the court, precludes application of the good-faith exception to the exclusionary rule. In *United States v. Leon*, 468 U.S. 897 (1984), the United States Supreme Court concluded that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." *Leon*, 468 U.S. at 922. And in *Arizona v. Evans*, 514 U.S. 1 (1995), the Court was faced with whether to exclude evidence seized during an arrest or apply the good-faith exception to the exclusionary rule when, because of an error by court employees with regard to computer records, the arrest was made on an arrest warrant quashed seventeen days earlier. The Court concluded that "[i]f court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction." *Evans*, 514 U.S. at 14. The Court, however, specifically refused to address whether the good-faith exception should apply when the mistake is made by law enforcement officials. *Evans*, 514 U.S. at 16 n.5.

 The prosecution carries the burden of establishing the applicability of the good-faith exception. *United States v. Leon*, 468 U.S. 897, 924 (1984); *McGhee v. State*, 25 Ark. App. 132, 136, 752 S.W.2d 303, 305 (1988); 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.3(f), at 71 n.65 (1996). However, even if we assume that Midgett did everything he could to determine the validity of the warrant, the State did not present any evidence explaining why the invalid warrant remained outstanding in the Greene County law enforcement records for nearly three months. Because we lack that information, it is impossible for this court to know whether the invalid warrant remained outstanding because of court error,

which, according to *Evans*, permits application of the good-faith exception, or police misconduct, which precludes application of the good-faith exception because of the lack of objectively reasonable reliance on the invalid arrest warrant. 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.3(f), at 71 (1996)("[B]ecause *Leon* rests upon the notion that the exclusionary rule is not implicated where there is no police misconduct to deter, that case does 'not allow law enforcement authorities to rely on an error of their own making,' as when they are at fault in failing to update their own records to show that a validly-issued [search] warrant is no longer in effect."); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.5(d), at 276 (1996)("The *Evans* rationale would seem inapplicable whenever the mistake was instead attributable to the law enforcement agency."); 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.5(d), at 276 n.100 (1996)("Then suppression of evidence obtained incident to that illegal arrest is called for 'to deter [the police department] from deliberately or negligently failing to keep its paperwork or computer entries up to date.' "). Thus, we conclude that the State failed to establish that there was objectively reasonable reliance on the invalid arrest warrant, and we must reverse and remand.

As an alternative basis for affirmance, the State argues that even though Midgett did not arrest appellant on a traffic violation and the sole basis for the arrest was the invalid arrest warrant, because there was probable cause to arrest the appellant for violating traffic laws in the presence of the arresting officer, there was an independent basis for appellant's arrest. Citing *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the State therefore concludes that the arrest was valid and the subsequent search was justified as a search incident to an arrest.

Specifically, the State argues that appellant violated Ark. Code Ann. § 27-51-301(a) (Supp. 1999), which provides that "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway. . . ." and Ark. Code Ann. § 27-51-302(1) (Repl. 1994), which provides that "[w]henever any roadway has been divided into two (2) or more clearly marked lanes for traffic, . . . [a] vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that movement can be made with safety. . . ." We conclude, however, that the evidence presented at the suppression hearing was inadequate to determine whether there was probable cause to believe that appellant violated the two statutes. Specifically, there is no evidence that appellant did not first ascertain that movement could be made with safety. Lacking this

evidence, we cannot say that the arrest and subsequent search may be justified under this analysis.

Reversed and remanded.

ROAF, J., agrees.

GRIFFEN and VAUGHT, JJ., concur separately.

STROUD, C.J., and CRABTREE, J., dissent.

WENDELL L. GRIFFEN, Judge, concurring. I agree to reverse and remand in this case because it is plain that appellant was arrested on an invalid warrant issued by governmental agencies. Further, it is the State's burden to demonstrate that the good-faith exception is warranted. *See McGhee v. State*, 25 Ark. App. 132, 752 S.W. 2d 303 (1988). Pursuant to *United States v. Leon*, 468 U.S. 897 (1984), and *Arizona v. Evans*, 514 U.S. 1 (1995), the State was required to show that the error was not the result of police conduct. Because the record does not demonstrate where the error in failing to remove the quashed warrant lies, the State failed to meet its burden of proof that the good-faith exception should apply.

While I agree with the result reached in this case, I write separately to state my belief that through *Leon, supra,* and its progeny, the United States Supreme Court has propounded a hypertechnical and extra-Constitutional rule whereby application of the good-faith exception turns on whether the error results from a mistake by the police, as opposed to some other governmental entity. *Leon* and *Evans* purport to limit application of the good-faith exception only where the deterrent purposes of the Fourth Amendment are furthered by its application. Such a rule disregards the fact that the purpose of the Fourth Amendment is to provide prophylactic protection against unreasonable searches and seizures by the *government. See United States v. Verdugo Urquidez,* 494 U.S. 259, 266 (1990)(stating, "[t]he available historical data show, therefore, that the purpose of the Fourth Amendment was to protect the people of the United States against arbitrary action by their own Government. . . ."); and *Delaware v. Prouse,* 440 U.S. 648, 653-54 (1979) (stating, "[t]he essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials"). The Fourth Amendment does not draw a distinction between police conduct and conduct by other government officials. Thus, I do not understand the Fourth Amendment to insulate evidence seized as a

result of a warrantless search, absent reasonable cause, where the warrant was issued as the result of governmental action merely because that action was not police-based.

However dutiful the officer may have been in following police procedure when effecting appellant's arrest, the decisive truth is that there was no constitutional justification for appellant's arrest. Therefore, we should not decide this and similar cases on the supposed "good faith" of the police, nor should it matter whether a warrantless search or seizure occurred because the police or other governmental agent has followed agency procedures. The Fourth Amendment is not the servant of the government nor does it exist to protect governmental procedures. Sadly, judges are now forced by the *Leon* and *Evans* holdings to pigeonhole governmental conduct that plainly results in an unreasonable search and seizure in order to determine whether such conduct will be sanctioned under the Fourth Amendment.

LARRY D. VAUGHT, Judge, concurring. I agree that the evidence seized from appellant after his arrest (on an invalid warrant) must be suppressed. I write separately to emphasize that the arresting officer acted properly in making the arrest, and would have been derelict in his duty had he not made the arrest. I also write to point out that the decisions of the Supreme Court of the United States in *United States v. Leon,* 468 U.S. 897 (1984), and *Arizona v. Evans,* 514 U.S. 1 (1995), indicate that the application of the exclusionary rule is appropriate even though the officer acted reasonably.

Although the *Evans* court declined to address the issue of whether one police agency could rely on faulty information from another police agency in good faith, the Court's reasoning leads me to the conclusion that it may not. In discussing the application of the exclusionary rule the Court noted:

> The question of whether the exclusionary rule's remedy is appropriate in a particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.

*Id.* at 10 (quoting *Illinois v. Gates,* 462 U.S. 213, 223 (1983)). The Fourth Amendment rights of the appellant were indeed violated when he was arrested on an invalid warrant. That question is not at

issue. The only question is whether the exclusionary rule is applicable or if the good-faith exception of *Leon* prevails.

The exclusionary rule is a remedial device whose application has been restricted to instances where its objectives are thought most efficaciously served. *Leon, supra.* Deterrence is the only objective of the rule, and "[w]here 'the exclusionary rule does not result in appreciable deterrence, then, clearly, its use . . . is unwarranted.' " *Evans,* 514 U.S. at 11 (quoting *United States v. Janis,* 428 U.S. 433, 454 (1976)). Accordingly, in *Leon,* the Court held that an officer would not be deterred by applying the rule to evidence obtained pursuant to a search warrant, issued by a magistrate, which was later found to be invalid. The Arkansas Supreme Court, following *Leon,* determined that the exclusionary rule is not applicable where officers search a house, pursuant to a warrant, where the judge found that the information supplied by the officers was sufficient to establish probable cause, even if the supreme court later determines that the information did not establish the requisite probable cause to search. *Yancey v. State,* 345 Ark. 103, 44 S.W.3d 315 (2001). Thus, in cases where the police officer on the scene commits some error or negligence, the rule would apply because his conduct is susceptible to deterrence. Just as obviously, where the police act in reliance on a warrant issued by a judge, the rule would not apply because no deterrence to the police officer could be shown.

The next logical extension, whether excluding evidence obtained as a result of a court clerk's error could promote the goal of deterrence, was considered in *Evans.* The Court denied application of the rule when it was shown that an invalid warrant was left in the computer system by an error of a court clerk. The court reasoned:

> [T]here is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions.

514 U.S. at 15 (citation omitted). However, this good-faith exception is not automatic. The State has the burden of proving entitlement to the exception. *Leon, supra.*

In the instant case, Deputy Midgett relied on the NCIC computer reading and the information obtained from the Greene County Sheriff's Office. The State failed to introduce evidence explaining why the warrant (that had been invalid for some three months) was not removed from NCIC after its quashing. Unlike in *Evans*, we do not know if the error is attributable to the Greene County Sheriff's Office or to the county's court personnel. Although the State has failed to identify who in Greene County is responsible for the delinquent record-keeping, it is obvious that Clay County is not implicated in the error. It is tempting to conclude that excluding evidence as a result of an error in Greene County will serve no purpose in deterring unlawful searches by law enforcement officers in Clay County. However, it is my opinion that the acknowledged Fourth Amendment violation in Greene County cannot be immunized by merely passing it along to Clay County. Therefore, I conclude that because the Greene County sheriff's officers are part of the "law enforcement team" referred to in *Evans*, the deterrent effect of the exclusionary rule is applicable and appropriate.

Although I hope that the net result of this decision is not to deter officers like Deputy Midgett from performing their duties in a reasonable manner, I believe that the Constitution requires law enforcement to act on reliable information. As pointed out by Justice O'Connor in *Evans*, "[c]ertainly the reliability of recordkeeping systems deserves no *less* scrutiny than that of informants." 514 U.S. at 17 (emphasis in original) (O'Connor, J., concurring). If police agencies are going to rely on computer systems, and I do not suggest that they should not, then they should not rely on them blindly. I conclude my concurrence, just as Justice O'Connor did in *Evans*, "[w]ith the benefits of more efficient law enforcement mechanisms comes the burden of corresponding constitutional responsibilities." 514 U.S. at 17-18 (O'Connor, J., concurring).

JOHN F. STROUD, JR., Chief Judge, dissenting. While I agree with the majority that Officer Jeff Midgett had reasonable suspicion to initially stop appellant, I disagree with the holding that the exclusionary rule requires the reversal of the trial court. I would affirm the denial of appellant's motion to suppress on the good-faith exception to the exclusionary rule.

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court noted that the basis for the good-faith exception to the exclusionary rule was the deterrent effect that the exclusion of

evidence would have on police officers, but would not have on magistrates or other court personnel. The Court said:

> We have frequently questioned whether the exclusionary rule can have any deterrent effect when the offending officers acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment. "No empirical researcher, proponent or opponent of the rule, has yet been able to establish with any assurance whether the rule has a deterrent effect. . . ." But even assuming that the rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity.

468 U.S. at 918-19 (citations omitted).

Although *Leon* dealt with the exclusionary rule relative to the suppression of evidence obtained in a search pursuant to a search warrant that was subsequently held to have been invalid, the reasoning of the case was adopted and quoted in *Arizona v. Evans*, 514 U.S. 1 (1995). In *Evans*, the facts were substantially the same as the instant case with two exceptions. In both cases an officer had reasonable suspicion to make a routine traffic stop; upon checking with the patrol car's computer the officer learned of an outstanding arrest warrant and made an arrest; upon search of the subjects and the vehicles unlawful drugs were found; and it was subsequently learned that the arrest warrant was no longer outstanding and should have been removed from the computer. In *Evans* there was testimony that the failure to remove the arrest warrant from the computer was the error of an employee of the clerk of the court, and in the instant case, there was no testimony as to the reason for the error. The other difference was that the officer in the instant case was not satisfied just to learn of the outstanding warrant on the computer; he also made two separate calls to the neighboring county where the warrant emanated and was told by two different dispatchers that the warrant was outstanding.

The majority opinion of the instant case places the burden on the prosecution to prove who made the error in not removing the quashed warrant from the computer. The defendant introduced the only evidence regarding the warrant being invalid, which was a copy of the court docket sheet showing the warrant had been quashed. The *Evans* decision reversed the Arizona Supreme Court decision that held that the exclusionary rule required suppression of

the evidence even if the faulty information resulted from an error committed by an employee of the clerk of the court. The *Evans* court held:

> If court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction. First, as we noted in *Leon*, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Second, *respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion.*

514 U.S. at 14-15 (citations omitted) (emphasis added).

The Court seems to place the burden on the defendant to show that court employees ignored or subverted the Fourth Amendment or that there was lawlessness among the actors in order to impose the extreme sanction of exclusion of the seized evidence. In the present case, there was no evidence that either court employees or law enforcement personnel were inclined to ignore or subvert the Fourth Amendment.

In *Evans*, the United States Supreme Court only held that the good-faith exception to the exclusionary rule supported a categorical exception for clerical errors of court employees; it did not make a ruling regarding errors that rest with law-enforcement personnel for failure to remove a warrant from the computer, and it did not have that question before it. In *Evans*, the Supreme Court cited its decision in *Leon, supra,* holding:

> [W]here the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that . . . the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.

514 U.S. at 11-12 (quoting *Leon, supra,* 468 U.S. at 919-20).

In my opinion, there was nothing more the arresting officer in the instant case could have done except ignore the outstanding warrant and that would have been a clear dereliction of his duty. I

am also not convinced that the suppression of the contraband discovered in Clay County due to an error committed by someone in the Greene County court system or by its law enforcement personnel would have any deterrent effect on the law enforcement personnel of Greene County, which is not the county where the arrest was made and the case was tried.

When the identity of the persons who failed to remove the warrant from the computer is unknown, and until such time as the United States Supreme Court or the Arkansas Supreme Court holds that the seized evidence should be excluded in spite of the fact that the arresting officer exercised exceptional care in determining that the warrant was truly outstanding before he made the arrest, I intend to vote to affirm such convictions.

I dissent, and I am authorized to state that Judge TERRY CRABTREE joins in this dissenting opinion. I would affirm the trial court.