James HOAY *v.* STATE of Arkansas

CR 01-1108                                          71 S.W.3d 573

Supreme Court of Arkansas
Opinion delivered April 4, 2002

[Petition for rehearing denied May 16, 2002]

*Blackmon-Solis & Moak, L.L.P.*, by: *DeeNita D. Moak*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal by appellant James Hoay from a conditional plea of guilty to possession of methamphetamine. He was sentenced to eighteen months to serve in prison followed by five years' suspended imposition of sentence. He appeals his conditional plea under Ark. R.

Crim. P. 24.3(b) based on the trial court's denial of his motion to suppress the seizure of methamphetamine following an illegal traffic stop. We reverse the order denying the suppression and remand this case for determination of the question of who was responsible for not quashing an outstanding arrest warrant that led to Hoay's invalid arrest.

On July 9, 1999, during the early evening hours, Officer Jeff Midgett of the Clay County Sheriff's Department observed a truck driven by Hoay move to the right of the fog line, cross the center line twice, and drive to the right of the fog line again for approximately one-half a mile to one mile. At that point, Officer Midgett stopped the vehicle. As the truck pulled off to the side of the road, the police officer saw the driver "bending over . . . toward the floorboard" of his vehicle. The driver identified himself as James Hoay, and he gave the police officer his driver's license. The police officer did not detect the smell of alcohol and requested no field sobriety tests. He ran the driver's license through the National Crime Information Center and found that there was an outstanding arrest warrant on Hoay issued from Greene County.

Officer Midgett then checked with two dispatchers in the Greene County Sheriff's Department and verified that an arrest warrant on Hoay was outstanding due to his failure to appear in court on a felony charge for possession of a controlled substance. The police officer returned to Hoay's vehicle and arrested Hoay on the outstanding warrant and handcuffed him. At that point he observed a bulge in one of Hoay's socks and pulled the sock down. He found a ziploc bag which contained crystal methamphetamine. In a bag with personal belongings located in the truck, Officer Midgett found a separate plastic bag and razor blades.

Hoay was charged with possession of methamphetamine and possession of drug paraphernalia. He moved to suppress the methamphetamine seized based on the fact that the Greene County warrant had been set aside and, thus, the arrest was invalid. In support of his motion, Hoay introduced a Greene County docket sheet showing that the arrest warrant was issued on Febru-

ary 11, 1999, and quashed on April 20, 1999. The motion was denied. The trial court specifically found that Officer Midgett was operating in good faith in making the arrest, though the court also noted that there was some breakdown in communication with the Greene County Sheriff's office. Hoay then entered his conditional plea to possession of methamphetamine. The drug paraphernalia charge was *nolle prossed*.

The Arkansas Court of Appeals suppressed the drugs seized and remanded the case. *Hoay v. State*, 75 Ark. App. 103, 55 S.W.3d 782 (2001). We granted the state's petition for review. When reviewing a case, we treat the matter as if the appeal were originally filed in this court. *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998).

Hoay contends on appeal that the trial court erred in denying his motion to suppress. This court has said that the proper standard for reviewing a trial court's grant of a motion to suppress is to "make an independent determination based upon the totality of the circumstances, viewing the evidence in the light most favorable to the State." *Bunch v. State*, 346 Ark. 33, 57 S.W.3d 124 (2001) (quoting *Wright v. State*, 335 Ark. 395, 983 S.W.2d 391 (1998)). The court will only reverse if the trial court's ruling is clearly against the preponderance of the evidence. *Id.*

Hoay urges that Officer Midgett lacked reasonable suspicion to effect the traffic stop. We disagree. Rule 3.1 of the Arkansas Rules of Criminal Procedure provides in part:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger or forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Officer Midgett observed Hoay weaving across the road lines for a substantial distance. That certainly would constitute reasonable suspicion of driving while intoxicated, even though Midgett did not smell alcohol on Hoay's breath after the stop. We conclude

that there was no error by Midgett in making the stop. *See Pierce-field v. State*, 316 Ark. 128, 871 S.W.2d 348 (1994).

Hoay's primary point on appeal is that he was arrested pursuant to an invalid arrest warrant and that, as a consequence, the subsequent search was invalid. The State's retort is that Officer Midgett operated in good faith in making the arrest and seizing the drugs and, indeed, did not only receive the information regarding the outstanding warrant from the NCIC but verified it twice through the Greene County Sheriff's dispatcher.

In *United States v. Leon*, 468 U.S. 897 (1984), the United States Supreme Court set the standard for searches and seizures made in good faith. In *Leon*, the Court confronted the question of a police officer's good-faith reliance on a magistrate's determination of probable cause in issuing a search warrant which was found to be invalid. The Court said that the purpose of the exclusionary rule for unconstitutional searches is to "deter police misconduct rather than to punish the errors of judges and magistrates." 468 U.S. at 916. The Court went on to say that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments." *Id.* at 918. The Court further found that suppression of evidence pursuant to a warrant should be ordered only on a case-by-case basis when the purposes of the exclusionary rule will be furthered. Quoting *United States v. Peltier*, 422 U.S. 531 (1975), the Court reasoned that evidence should only be suppressed if the particular officer "had knowledge, or may properly [have been] charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *Id.* at 919 (quoting *United States v. Peltier*, 422 U.S. at 539). The Court concluded that where an officer is acting in good faith, using an objective standard, a subsequently invalidated warrant obtained from a magistrate will not operate to trigger the exclusionary rule. *Id.* at 920–21.

In *Arizona v. Evans*, 514 U.S. 1 (1995), the Court was confronted with a situation that bears striking similarities to the case at hand. In *Evans*, a police officer pulled the defendant over after he

violated a traffic law. After learning that the defendant's driver's license was suspended, the police officer entered the defendant's license into a data terminal in his patrol car. He discovered that the defendant had a outstanding misdemeanor warrant. Based on the outstanding warrant, the police officer arrested Evans and handcuffed him. After doing so, he discovered that Evans had a marijuana cigarette. Later, it came to light that the misdemeanor arrest warrant had been quashed seventeen days prior to the arrest, but the evidence showed that a court clerk had made the computer error and not the sheriff's office. The Court concluded that a court clerk must have been responsible for the error and, thus, exclusion of the evidence would serve no deterrent effect on the police department. The Court said:

> If court employees were responsible for the erroneous computer record, the exclusion of evidence at trial would not sufficiently deter future errors so as to warrant such a severe sanction. First, as we noted in *Leon*, the exclusionary rule was historically designed as a means of deterring police misconduct, not mistakes by court employees. Second, respondent offers no evidence that court employees are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. To the contrary, the Chief Clerk of the Justice Court testified at the suppression hearing that this type of error occurred once every three or four years.
>
> Finally, and most important, there is no basis for believing that application of the exclusionary rule in these circumstances will have a significant effect on court employees responsible for informing the police that a warrant has been quashed. Because court clerks are not adjuncts to the law enforcement team engaged in the often competitive enterprise of ferreting out crime, they have no stake in the outcome of particular criminal prosecutions. The threat of exclusion of evidence could not be expected to deter such individuals from failing to inform police officials that a warrant had been quashed.
>
> . . .
>
> There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record. Application of the *Leon* framework supports a categorical exception to the exclusionary rule for clerical errors of court employees.

*Id.* at 14–16 (internal citations omitted). The clear import of the *Evans* decision is that the good-faith exception to the exclusionary rule is applicable for errors committed by court personnel. The converse issue of whether the good-faith exception applies when police personnel are involved in faulty recordkeeping was not reached by the Court. Justice O'Connor, however, noted in her concurrence in *Evans*: "Certainly the reliability of recordkeeping systems deserves no *less* scrutiny than that of informants." 514 U.S. at 17 (CONNOR, J., concurring). She was joined by two other justices in her concurrence. Two additional justices dissented to the *Evans* holding, albeit for different reasons, on the basis that the exclusionary rule should apply to clerical errors made by court personnel.

■ In the case before us, the State failed to establish who was at fault in failing to nullify the Greene County arrest warrant. While the State argues to the contrary, it was the State's burden to show that the good-faith exception to an unconstitutional search applied. *See United States v. Leon*, 468 U.S. at 924 ("[T]he prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time."). And while the State offers that Officer Midgett ostensibly acted in good faith, the State fails to address whether that good faith extended beyond Officer Midgett and to the law enforcement personnel in the Greene County Sheriff's Department. Indeed, the Court said in *Leon* that "[i]f exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officer *or the policies of their departments*." *United States v. Leon*, 468 U.S. at 918 (emphasis added). While Officer Midgett's actions are relevant to the first part of *Leon*'s concern, clearly the actions of the Greene County Sheriff's Office are relevant to determine whether the exclusion of evidence would alter the policies of that department with respect to recordkeeping and arrest warrants.

■ Ascertaining the scope of the fault in failing to quash an invalid search warrant is a matter of first impression for this court. Officer Midgett acted reasonably and in good faith in this case, based on what we have before us. It would fly in the face of the *Leon* principle, however, were this court to refuse to suppress the

drugs seized based on objective good faith when Greene County law enforcement personnel, as opposed to Officer Midgett, may have been at fault. If the touchstone of the exclusionary rule is deterrence of police misconduct, as *Leon* makes clear, that rule should apply equally to defective recordkeeping by law enforcement. Hence, the issue of who was at fault, court personnel or law enforcement, needs to be resolved. We note on this point that the State, as a secondary argument, does not oppose a remand to resolve this issue.

▇ Accordingly, we reverse the order denying suppression and remand this case to the trial court for a second suppression hearing to determine who was at fault in failing to quash the arrest warrant. If law enforcement personnel were not responsible, and the error was clerical in nature, then the good–faith exception should apply. *See Arizona v. Evans, supra.*

Reversed and remanded.

ARNOLD, C.J., CORBIN and HANNAH, JJ., dissent.

W H. "DUB" ARNOLD, Chief Justice, dissenting. I agree with the majority that Officer Midgett acted reasonably and in good faith in this case based upon what we have before us; however, I disagree with the majority that the facts of *this* case necessitate a determination of who was responsible for not quashing an outstanding arrest warrant that led to the appellant's invalid arrest. Although the identity of the person(s) who failed to remove the warrant from the computer is unknown, I believe it is clearly immaterial in *this* particular case, wherein the arresting officer from one county relied in good faith upon the information from another county and exercised exceptional care in determining that the warrant was truly outstanding before he made the arrest. In my opinion, this case illustrates a perfect example of when the good–faith exception to the exclusionary rule should apply under *Leon*, thereby saving from suppression the evidence seized during the search incident to arrest.

In *Yancey v. State*, 345 Ark. 103, 44 S.W.3d 315 (2001), we stated that the Supreme Court in *Leon* noted that the Fourth Amendment contains no provision expressly precluding the use of

.evidence obtained in violation of it commands. *Id.* In interpreting *Leon*, we stated:

> The Court further noted that an examination of the Fourth Amendment's origin and purposes makes it clear that the use of fruits of a past unlawful search or seizure works no new Fourth Amendment wrong. The exclusionary rule rather works to deter future violations generally. *Leon*, 468 U.S. at 906. The Court then went on to note that if the goal is to deter future police misconduct, then it only makes sense to apply the exclusionary rule where indeed its application has a deterrent effect, and that where the officers acted in objective good faith or where the transgressions are minor, the magnitude of the benefit conferred upon guilty defendants offends the basic concepts of the justice system. *Id.* at 907. The Court found that in the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically correct, and that once the warrant issues, there is literally nothing more the officer can do in seeking to comply with the law. *Leon, supra*; *Starr v. State*, 297 Ark. 26, 759 S.W.2d 535 (1988).

*Id.* at 118. Certainly, in this case, there was nothing more the arresting officer could have done except ignore the outstanding warrant, and that would have been a clear dereliction of his duty. Further, and more importantly, I fail to comprehend how the suppression of the contraband discovered in *Clay* County due to an error committed by someone in the *Greene* County court system *or* by its law enforcement personnel would have *any* deterrent effect on the law enforcement personnel of Greene County, which is not the county wherein the arrest was made and the case was tried.

The majority relies heavily on the *Arizona v. Evans*, 514 U.S. 1 (1995), case to support its opinion that when police personnel are involved in faulty recordkeeping, the good-faith exception does not apply; however, I believe the majority's opinion is too far-reaching. It is basically lumping *all* police personnel, from whatever county, city, or state, together under the theory that, in so doing, it will have some sort of universal deterrent effect. This is implausible.

In *Evans*, the facts were substantially the same as the instant case with two exceptions. In both cases an officer had reasonable suspicion to make a routine traffic stop; upon checking with the patrol car's computer, the officer learned of an outstanding arrest warrant and made an arrest; upon search of the subjects and the vehicles, unlawful drugs were found; and it was subsequently learned that the arrest warrant was no longer outstanding and should have been removed from the computer. In *Evans*, there was testimony that the failure to remove the arrest warrant from the computer was the error of an employee of the clerk of the court; and, in the instant case, there was no testimony as to the reason for the error. The other difference, and the one that makes this case so distinguishable from *Evans*, was that the officer in the instant case was not satisfied just to learn of the outstanding warrant on the computer; he also made two separate calls to the neighboring county where the warrant emanated and was told by two different dispatchers that the warrant was outstanding.

Through his own dispatcher, Midgett checked appellant's license with the National Crime Information Network ("NCIC"), which, according to Midgett, is a nationwide list of persons who have felony warrants for arrest, and found that a warrant for appellant's arrest had been issued in Greene County. Midgett then contacted two different dispatchers for Greene County, one by telephone and one by radio, and Midgett was informed by both dispatchers that they possessed an arrest warrant for appellant based on his failure to appear on a felony charge for possession of a controlled substance. Midgett testified that he did not know that the warrant had been set aside, that this was his typical method for verifying warrants, and that he had no problems with Greene County in the past, as he had made several felony and misdemeanor arrests on Greene County warrants.

Again, in this case, there was nothing more the arresting officer could have done, and I fail to understand how the suppression of the contraband discovered in *Clay* County due to an error committed by someone in the *Greene* County court system *or* by its law enforcement personnel would have *any* deterrent effect on the law enforcement personnel of Greene County, which is not the county wherein the arrest was made and the case was tried.

Even if the error was determined to be the fault of law enforcement from Greene County, Officer Midgett, a *Clay* County officer, still acted in good faith.

In short, although the identity of the person(s) who failed to remove the warrant from the computer is unknown, I believe it is clearly immaterial in *this particular* case. I, therefore, must dissent with the majority's decision to remand the case for a determination of who was responsible for not quashing the warrant.

CORBIN and HANNAH, JJ., join this dissent.