Angela Michelle BLEVINS *v.* STATE of Arkansas

CA CR 05-1053                                    235 S.W.3d 921

Court of Appeals of Arkansas
Opinion delivered May 17, 2006

*James Greer Lingle* and *John Wesley Hall, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *David R. Raupp*, Sr. Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Angela Michelle Blevins was convicted by a jury of possession of at least ten pounds of marijuana, but less than 100 pounds, with intent to deliver. Mrs. Blevins was sentenced to seventeen years in prison and fined $32,500.00. Mrs. Blevins's sole argument on appeal is that the trial court erred in denying her motion to suppress the contraband because it was obtained as the result of illegal searches and seizures in violation of the Fourth Amendment. We affirm.

Officer Richard Pound testified at the hearing on appellant's motion to suppress. He stated that, on October 30, 2003, he received a tip from the Crime Stoppers Anonymous Tip Line. The caller advised that Mrs. Blevins was selling large quantities of marijuana out of her house in Bella Vista, and that she kept marijuana in a storage facility and possibly in her basement. Officer Pound ran a check and found that Mrs. Blevins had a prior drug arrest, and that her husband was in custody at the sheriff's office. Officer Pound also discovered that Mrs. Blevins rented storage unit F-29 at Blue Mountain Storage.

Officer Pound received another anonymous tip on November 7, 2003. The caller stated that Mrs. Blevins periodically rented vacation homes from Bella Vista Rental Vacations, where she would receive shipments of marijuana. The rental company confirmed that Mrs. Blevins had rented vacation homes on numerous occasions.

Officer Pound reviewed a phone call made from Horatio Bautista to Mrs. Blevins on November 22, 2003. The call was made from jail, where Mr. Batuista was being detained after being arrested for possession of marijuana. During the conversation, Mr. Bautista apologized for stealing money and marijuana from Mrs. Blevins. Mrs. Blevins responded, "Well how did you do this? You were snooping in my stuff."

Officer Pound stated that Blue Mountain Storage cooperated with the police and allowed them access to the storage facility and a unit adjacent to Mrs. Blevins's unit. According to Officer

Pound, a clear piece of tape was attached to the bottom of the door of Mrs. Blevins's storage unit. The police periodically checked the tape for three or four weeks and noticed that it was no longer in place on December 23, 2003. On that evening a canine officer, Jim Johnson, was contacted and arrived at the storage facility. Officer Johnson advised that his dog alerted that there were drugs in Mrs. Blevins's unit. Officer Pound did not know the specific qualifications of the drug dog, but stated that the dog was purchased for about $10,000.00, that he had used the dog in prior inspections, and that "he did a good job."

After the canine alerted to the presence of drugs, the police monitored the storage unit awaiting a search warrant. Another investigating officer, Travis Newell, swore out an affidavit dated December 23, 2003, wherein he stated the following grounds for searching the unit:

> On 30th day of October 2003, Benton County Sheriff's Office received a Crime Stoppers tip from an anonymous source stating, Angie Blevins of 72 Westbury road in Bella Vista was selling large quantities of marijuana out of her home. The source stated that Blevins received several hundred pounds of marijuana every few months. The anonymous source stated that Blevins kept the marijuana in a storage facility.

> I discovered that Blevins had rented a 10x10 standard storage unit, F-29, at Blue Mountain Storage on the 9th day of October 2003. The unit she rented can be accessed through a roll up door that faces a gravel driveway. Blue Mountain Storage is located a short distance from the Blevins residence. Blue Mountain Storage associates informed me that storage unit F-30, located beside Blevins unit was vacant. I was given permission to use unit F-30.

> I ran a criminal history check on Blevins which revealed that in 1985 she was arrested for violation of the uniformed controlled substance act, 1994 an arrest for aggravated assault, 1997 breaking and entering and theft of property.

> On the 7th day of November 2003, we received a second Crime Stoppers report stating that Blevins was receiving the large shipments of marijuana at Vacation Rental Homes in Bella Vista and then storing the marijuana in her house and at a storage facility. I went to Vacation Rentals and confirmed that Blevins had rented houses on numerous occasions.

I have made numerous trips to the storage unit to see if Blevins had accessed the unit. I placed a clear piece of tape on the bottom of the door on her unit. On 23rd day of December 2003, I discovered that the tape was no longer in place. I then contacted K-9 Officer Jim Johnson of the Bentonville Police Department and requested his assistance. Officer Johnson stated that his K-9 alerted numerous times on unit F-29. I then opened unit F-30 and the K-9 alerted on the wall dividing unit 30 and 29.

Based on Officer Newell's affidavit a search warrant was issued, and it was executed on the morning of December 24, 2003. During the search of the storage shed, the police found a large quantity of marijuana. Based in part on what was discovered in the storage shed, Officer Newell swore out an affidavit for the search of Mrs. Blevins's home. This affidavit contained the same grounds for issuing a warrant that were stated in the first affidavit, along with the following additional language:

On November 22, 2003, an inmate from the Benton County Jail named Horacio Bautista placed a call to Angela Blevins from inside the jail. Phone calls from inmates are taped pursuant to jail policy. I listened to a tape of this conversation and Bautista tells Angela Blevins that on an occasion he was at her house watching her children he took money and "weed" from her home. I know from my experience and training that "weed" is commonly used to refer to marijuana. Blevins stated that Bautista found the "weed" when he was snooping around in her basement. I noted on the first Crime Stoppers report the anonymous tip stated that Blevins was keeping the marijuana in her basement. I also learned that Bautista was stopped by Bentonville Police Department and they located blank checks with Angie Blevins' name on them. Bautista was arrested by Bentonville Officers for possession of two ounces of marijuana.

. . . .

A search warrant was served at approximately 9:30 a.m. on December 24, 2003, and two large black "Contico" trunks/lockers were found inside the storage unit. These containers were pad-locked. Upon opening the lockers, numerous individual packages of dried marijuana in brick form were found wrapped in newspapers and plastic packaging with duct tape around each individual package. A suitcase was also found in the storage facility which had a blue blanket inside and a fabric softener sheet. I know from my experi-

ence and training that drug traffickers commonly use fabric softener sheets to mask the odor of narcotics to make it harder to detect by law enforcement officers or narcotics dogs while transporting the narcotics.

Based on the second affidavit, a warrant was issued to search Mrs. Blevins's home. The search warrant was executed on the afternoon of December 24, 2003, and the police found additional quantities of marijuana along with a scale and various other items of drug paraphernalia.

The trial court specifically found that there was a lack of probable cause to issue either of the search warrants. However, in denying Mrs. Blevins's motion to suppress, the trial court relied on the good-faith exception to the exclusionary rule as set out in *United States v. Leon*, 468 U.S. 897 (1984).

At the trial, Officer Newell gave testimony regarding the searches and seizures executed at Mrs. Blevins's storage unit and home. Gene Bangs, a drug analyst for the Arkansas State Crime Lab, indicated that the aggregate weight of the marijuana seized from Mrs. Blevins was 86.9 pounds. Officer Debbie Woods testified that on the day Mrs. Blevins's home was searched, she helped secure the house and had a conversation with Mrs. Blevins. According to Officer Woods, Mrs. Blevins admitted that she owned the items in the storage unit and had taken over her husband's drug-dealing operation after he left her.

Mrs. Blevins testified on her own behalf, and stated:

> I understand that I don't have to testify, that neither the judge, the jury, or anybody can make any inference from the fact if I didn't testify . . . they couldn't infer anything from that. I want to testify today. I wish to tell my story to the jury. . . . I am guilty of the crime of possessing marijuana, and it was a terrible decision I made. I understand it was wrong. I possessed between ten and a hundred pounds of marijuana with intent to deliver.

On appeal, Mrs. Blevins argues that the trial court erred in denying her motion to suppress based on the application of the good-faith exception, and that the searches of her storage unit and home were illegal. She cites Ark. R. Crim. P. 13.1(b), which provides:

> The application for a search warrant shall describe with particularity the persons or places to be searched and the person or things to be

seized, and shall be supported by one (1) or more affidavits or recorded testimony under oath before a judicial officer particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched. If an affidavit or testimony is based in whole or in part on hearsay, the affiant or witness shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained. An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place. Failure of the affidavit or testimony to establish the veracity and bases of knowledge of persons providing information to the affiant shall not require that the application be denied, if the affidavit or testimony viewed as a whole, provides a substantial basis for a finding of reasonable cause to believe that things subject to seizure will be found in a particular place.

Mrs. Blevins submits that there was no reasonable cause to issue the search warrants because the reliability of the two anonymous informants was not established, and the affidavit failed to set out the qualifications of the police dog.

Mrs. Blevins acknowledges that, in *United States v. Leon*, *supra*, the Supreme Court held that an officer's objective, good-faith reliance on a facially valid warrant will avoid application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. This is because the exclusionary rule is designed to deter police misconduct rather than to punish errors of judges and magistrates. *Sanders v. State*, 76 Ark. App. 104, 61 S.W.3d 871 (2001). However, Mrs. Blevins notes that it was the State's burden to establish applicability of the good-faith exception, *see Hoay v. State*, 348 Ark. 80, 71 S.W.3d 573 (2002), and argues that the State failed to meet its burden.

The good-faith exception cannot cure certain errors, namely: (1) when the magistrate is misled by information the affiant knew was false; (2) if the magistrate wholly abandons his detached and neutral judicial role; (3) when the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when a warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *United States v. Leon*, 468 U.S. at 914-15. Mrs. Blevins maintains that the third error is present in this case.

Because the police did not even attempt to corroborate the reliability of the informants or canine team, Mrs. Blevins contends that the affidavit to search the storage unit was so lacking in probable cause that objective reliance upon it was entirely unreasonable. Because the search of her house was primarily based on the same information in the first affidavit along with illegally-obtained evidence from the unlawful search of the storage shed, Mrs. Blevins argues that the fruits of the search of her house should have been suppressed as well. She also urges that any incriminating statements she made to the police as a result of the searches were inadmissible.

Mrs. Blevins further relies on Ark. R. Crim. P. 16.2(e), which provides:

> Determination. A motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state. In determining whether a violation is substantial the court shall consider all the circumstances, including:
>
> (i) the importance of the particular interest violated;
>
> (ii) the extent of deviation from lawful conduct;
>
> (iii) the extent to which the violation was willful;
>
> (iv) the extent to which privacy was invaded;
>
> (v) the extent to which exclusion will tend to prevent violations of these rules;
>
> (vi) whether, but for the violation, such evidence would have been discovered; and
>
> (vii) the extent to which the violation prejudiced [the] moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.

Mrs. Blevins asserts that all but the last of the above circumstances apply to this case, and that the trial court erred in failing to grant her motion to suppress.

■ We review a trial court's motion to suppress by making an independent determination based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). Under these standards, and assuming for purposes of review that the affidavits failed to provide probable cause as argued by appellant and found by the trial court, we hold that the trial court committed no error in applying the good-faith exception and denying Mrs. Blevins's motion to suppress.

In *Moya v. State*, 335 Ark. 193, 981 S.W.2d 521 (1998), our supreme court announced:

> Where there is neither a written affidavit nor sworn, recorded testimony in support of a search warrant, this court will not apply the good-faith exception to uphold the search warrant. Where, however, there is a written affidavit in support of the search warrant that later is ruled deficient, this court will go beyond the four corners of the affidavit and consider unrecorded oral testimony to determine whether the officers executing the search warrant did so in objective good-faith reliance on the judge's having found probable cause to issue the search warrant. Moreover, this court may also consider information known to the executing officers that may or may not have been communicated to the issuing judge.

*Id.* at 202, 981 S.W.2d at 525-26. In the instant case the affidavits cited anonymous tips and indicated that a police canine alerted numerous times on the storage unit. While the affidavit failed to disclose any qualifications of the canine, Officer Pound testified at the suppression hearing that the dog cost $10,000.00, that he has used him in the past, and that "he did a good job." Thus, there was information known to one of the executing officers that bolstered the reliability of the canine.[1] Under these circumstances, we think the officers had an objective good-faith reliance on the issuance of the warrant to search

---

[1] In its brief, the State, citing *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002), urges us to consider the trial testimony of the canine handler, Officer Johnson, where the officer gave more detailed testimony concerning the qualifications of the canine. However, consideration of this evidence is not necessary to the disposition of this appeal because the testimony at the suppression hearing was sufficient to establish the good-faith exception. Moreover, we are hesitant to consider such evidence because, while the supreme court in *Howell v. State*,

the storage unit. Because the first search was valid, the fruits of the subsequent search and incriminating statements by Mrs. Blevins were also properly admitted.

█ While Mrs. Blevins argues that the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, we disagree. We have held that once a police canine alerts, an officer has probable cause to suspect the presence of illegal contraband. *See Miller v. State*, 81 Ark. App. 401, 102 S.W.3d 896 (2003); *Willoughby v. State*, 76 Ark. App. 329, 65 S.W.3d 453 (2002). Because the affidavit presented by Officer Newell included a positive canine sniff, at a minimum it established an objectively reasonable belief that there was probable cause to conduct a search. We do not agree with appellant's claim that there was any willful police misconduct or that the deterrent purposes of the Fourth Amendment were compromised in this case.

Having concluded that the trial court did not err, we hold that, even if the contraband should have been suppressed, the error was harmless beyond a reasonable doubt in view of the fact that Mrs. Blevins testified at her trial and admitted every element of the crime. *See Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996); *Coon v. State*, 76 Ark. App. 250, 65 S.W.3d 889 (2001); *Pool v. State*, 29 Ark. App. 234, 780 S.W.2d 350 (1989); *Barlow v. State*, 28 Ark. App. 21, 770 S.W.2d 186 (1989). At trial, Mrs. Blevins testified that she was in possession of between ten and 100 pounds of marijuana with intent to deliver, and there were no factors tending to make this statement unreliable. *See Isbell v. State, supra; Coon v. State, supra*.

Mrs. Blevins argues that her incriminating trial testimony is itself the fruit of the poisonous tree and thus cannot render an illegal search harmless. She contends that to hold otherwise would result in forcing a criminal defendant to sacrifice one constitutional right to protect another in violation of the Supreme Court's holding in *Simmons v. United States*, 390 U.S. 377 (1968). In this regard, Mrs. Blevins asserts that in order to protect her Fourth

---

*supra*, relied in part on trial testimony to affirm a suppression ruling, it did so without addressing its decision in *Riggs v. State*, 339 Ark. 111, 3 S.W.3d 305 (1999), where the supreme court indicated that trial testimony should not be considered in this context because it was not before the trial court for suppression purposes.

Amendment rights she would have to refuse to take the stand in violation of her Fifth and Sixth Amendment rights to testify. With this we cannot agree.

In *Simmons v. United States, supra*, the appellant gave inculpatory testimony at a hearing on his motion to suppress evidence in order to establish an expectation of privacy and standing to contest the search. The Supreme Court held that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection. The circumstances of the present case are distinguishable from *Simmons* in that the testimony at issue was elicited at trial, and there was nothing to suggest that Mrs. Blevins was forced to testify to protect any right or present any defense. It is evident that her decision to testify and give a judicial confession was simply a matter of trial strategy, and it appears that the testimony served no purpose other than to demonstrate repentance to the jury. *See Coon v. State, supra*. Under such circumstances, she was not forced to choose between constitutional rights and simply elected to exercise her constitutional right to testify.

In light of the above it is clear that Mrs. Blevins's testimony was not a fruit of the poisonous tree. In *Pool v. State, supra*, which our supreme court agreed with in *obiter dictum* in *Towe v. State*, 304 Ark. 239, 801 S.W.2d 42 (1990), we declined an invitation to throw out a judicial confession on the ground that it had been induced by the presentation of physical evidence that should have been suppressed. We held that Pool's judicial confession was not impelled by the introduction of the disputed physical evidence, and was a voluntary act sufficiently distinguishable from the search to be purged of any taint of illegality associated with it. The same is true in the case at bar. Blevins's testimony was not calculated to mitigate or combat the State's evidence, or to provide an innocent explanation. Her testimony amounted to no more than an unprovoked judicial confession admitting guilt, and it was not the fruit of the poisonous tree.

Affirmed.

PITTMAN, C.J., and BAKER, J., agree.