## Danny STEWART *v.* STATE of Arkansas

CR 85-191                                    711 S.W.2d 787

Supreme Court of Arkansas
Opinion delivered June 23, 1986

*Brad J. Beavers* and *W. Frank Morledge, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *Jerome T. Kearney*, Asst. Att'y Gen., for appellee.

GEORGE ROSE SMITH, Justice. The appellant, Danny Stewart, was charged with having murdered Edna Jolly on March 7, 1984. He was found guilty of capital murder and sentenced to life imprisonment without parole. His principal argument for reversal is that his confession to the police was the product of an illegal arrest and should have been suppressed. The State responds that the arrest was proper because the police acted in good faith within the Supreme Court's ruling in *United States* v. *Leon*, 104 S. Ct. 3405 (1984). We cannot uphold the conduct of the police or of the municipal judge with respect to the arrest warrant and must reverse the judgment of conviction.

Mrs. Jolly's murder in March was an unsolved crime for almost five months. On August 1 Linda Hancock reported to the Forrest City police that she was getting obscene phone calls. A tap placed on her telephone showed that another call received by Ms. Hancock later that day had been made from the house in which Danny was living with his parents. Ms. Hancock described the caller's voice as that of a young black male. Officer Bill Dooley

went about getting a warrant for Danny's arrest. The officer filled in a printed form of Affidavit For Arrest Warrant, in which Linda Hancock was to swear that Danny Stewart had made an obscene phone call to her. Officer Dooley took the affidavit to Ms. Hancock's home and obtained her signature. She did not swear to it. Instead, the officer took the signed form to the office of the municipal court clerk, where a deputy filled in and signed the jurat without having talked to Ms. Hancock.

Municipal Judge John D. Bridgforth had signed a pad of 50 or more blank arrest warrants and had authorized the clerk to issue warrants on her own after having read the supporting affidavit and made certain it had been signed. Judge Bridgforth testified that he never saw the affidavit in this instance and made no judicial determination of reasonable cause for the arrest of Danny Stewart. The clerk, however, filled in one of the presigned warrants, charging Danny Stewart with harassment by communication, and gave it to Officer Dooley. He turned it over to another officer, who arrested Stewart and brought him in for questioning. Stewart was given the usual Miranda warning. He was first questioned about the phone calls and then about the murder of Edna Jolly. Stewart signed a confession in which he told how he had gone to a house on Franklin Street and entered by breaking a large window, after having first broken a small window in the back door. He found "an old white lady" in the bedroom. When she began yelling he hit her more than once with the piece of wood he had used to break the windows. He carried her outside and left her in a ditch by a railroad track. The details he gave corresponded to what the police had found back in March. The confession was the cornerstone of the State's case.

We have already decided to accept and adhere to the *Leon* relaxation of the exclusionary rule. *Lincoln* v. *State*, 285 Ark. 107, 685 S.W.2d 166 (1985). In the case at bar, however, the key element of good faith is lacking. Officer Dooley knew that Linda Hancock had not made her accusation under oath, an essential element of an affidavit. He could not have acted in good faith in obtaining the arrest warrant on the strength of that spurious affidavit.

The conduct of Judge Bridgforth was inexcusable. The *Leon* opinion states that the good faith exception will not apply in cases

"where the issuing magistrate wholly abandoned his judicial role." *Leon*, p. 3422. In Arkansas the magistrate's judicial role is clearly stated in Criminal Procedure Rule 7.1(b):

> (b) In addition, a judicial officer may issue a warrant for the arrest of a person if, from affidavit, recorded testimony, or other information, it appears there is reasonable cause to believe an offense has been committed and the person committed it.

Judge Bridgforth testified that he had authorized the court clerk to issue warrants of arrest for misdemeanors. This warrant was for a misdemeanor, the making of an obscene call. But Rule 7.2(a)(iii) requires that every arrest warrant "be signed by the issuing official with the title of his office." The warrant now in question recites that there are reasonable grounds for believing that Danny Stewart has committed the offense of harassment by communication. Any law enforcement officer is ordered by the warrant to arrest Stewart and bring him before the municipal court of Forrest City. Those statements appeared above Judge Bridgforth's signature. He signed the warrant; the clerk did not. Judge Bridgforth was the "issuing official," not the clerk. Had the officers known nothing about the warrant when they received it, perhaps they might have relied on it in good faith. But here Officer Dooley took the warrant to the clerk's office, saw the deputy complete the jurat, and certainly knew that Judge Bridgforth had taken no part in the procedure, which Dooley said took only 4 or 5 minutes in the clerk's office.

■ In view of the police officer's knowledge of the illegal procedure and of the issuing magistrate's abdication of his responsibility, the arrest cannot be upheld under the ruling in the *Leon* case. The arrest was followed immediately by Stewart's interrogation and confession. The trial court should have suppressed the confession under the poisonous tree principle.

The appellant's next four points all relate to the confession or to the arrest and need not be discussed, for they will not arise upon a retrial.

The fifth point relates to a fingerprint. In March the police picked up pieces of broken glass at the Jolly home and sent them to the State Crime Laboratory. A latent fingerprint was found on

one piece of glass. When Danny Stewart was arrested, his fingerprints were taken. An expert compared them with the latent print and testified that the latent print had been made by Stewart's righthand ring finger.

The appellant now renews the arguments made at trial, that the chain of custody for the broken glass was not complete and that there was no proper foundation for the expert comparison. We need not pass upon these objections, for the State's proof may be more detailed at a second trial. We do note that neither at the trial nor in appellant's brief has it been argued that the illegality of the arrest made the fingerprint comparison inadmissible. It is not our practice to express an opinion about points not presented.

A final argument is that certain photographs of Ms. Jolly's body should have been excluded as being inflammatory. The trial judge did not abuse his discretion in allowing the pictures to be introduced in evidence.

Reversed and remanded.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. I agree with the majority opinion with the single exception of the failure to rule on the suppression of the fingerprints obtained as a result of the illegal arrest. In keeping with the time-honored doctrine of exclusion of fruit of the poisonous tree, I would at this time inform the trial court and the state that the illegally obtained fingerprints may not be used if a retrial is conducted in this case. *Wong Sun* v. *United States*, 371 U.S. 471 (1963).