Barbara D. BOGARD *v.* STATE of Arkansas

CA CR 03-1328 197 S.W.3d 1

Court of Appeals of Arkansas
Opinion delivered November 3, 2004

*Guy R. Satterfield*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

R OBERT J. GLADWIN, Judge. Barbara Bogard was charged with first-degree forgery and possession of drug paraphernalia in Faulkner County Circuit Court. Pursuant to Ark. R. Crim. P. 24.3, appellant entered a guilty plea conditioned on the outcome of her appeal of the trial court's denial of her motion to suppress. Appellant raises several points on appeal: (1) the probation officers' conduct was an unlawful intrusion without probable cause or a search warrant and was not the result of valid consent; (2) she was not advised of her Miranda rights and the search exceeded the reasonable scope of a search under the totality of the circumstances; (3) the probation officers were without authority and jurisdiction to conduct a warrantless search of her home. Because there was simply no evidence as to good faith, which was the basis of the trial court's finding, we reverse and remand.

At a hearing on appellant's motion to suppress, Probation Officer Terri Rowlett testified that appellant's husband, Scott Crow, began his three years' probation on May 29, 1997, for a felony conviction of fraudulent use of a credit card. As a result of the State's petition to revoke, Crow's probation period was extended two years on July 16, 2001. Rowlett stated that on January 25, 2002, she made a routine visit to Crow's residence. Rowlett testified that appellant, Crow's wife, opened the door and said she had something on the stove. Rowlett went inside the home, and appellant explained that Crow was at work. The other two probation officers with Rowlett did a "walk through" of the residence. One of the officers informed Rowlett that she had found a plastic corner baggie with residue on a bed. Rowlett called her supervisor and told the supervisor they were going to conduct a full search. Rowlett stated that in the bedroom they found pipes, a baggie with white powder residue, pills in bottles, cigarette cellophanes, a tin box containing pills and four $100 bills, a red bag containing four more $100 bills and one $10 bill, and a baggie of seeds and residue. In the trash they found pieces of burnt tin foil, corner baggies with white powder residue, and a pipe with burnt residue. In the medicine cabinet, they found various pills in

cellophane. A pill bottle found in the kitchen cabinet contained empty capsules and loose powder. In a bag in the music room, they found a pipe, straws, and glass. Because the money appeared to be counterfeit, Rowlett called the sheriff's office, and an investigator eventually arrived on the scene.

On cross-examination, Rowlett testified that appellant invited them into the home. Further, Rowlett stated that she did not file a petition to revoke Crow's probation based on the items found at his residence because he was not present during the search and because his probationary period had expired. She admitted that she and the other probation officers opened drawers and containers and that they questioned appellant about the contraband.

Michelle Ross, a probation officer, testified that appellant let them come inside the house. Ross stated that she asked appellant about the money that looked counterfeit and that appellant told her how she made it on the computer and said she was just fooling around. Ross stated that she did not advise appellant of her Miranda rights before questioning her. At that point, the State conceded that appellant's statement was not admissible.

Kelli Brock, another probation officer, testified that Rowlett told appellant they were there to do a home visit on Crow and that appellant said that Crow was not there. She stated that they then entered and appellant did not tell them to leave. Brock explained that she was not sure about the exact conversation at the door because she was standing in the yard.

Jim Wooley, an investigator with the Faulkner County Sheriff's Office, testified that the probation officers turned all of the evidence over to him. Based on the evidence and statements from the probation officers, he arrested appellant.

In denying appellant's motion to suppress, the trial court found that Crow was, or appeared to be, on probation and that the probation officers had the authority to be on the site. The court further found that the probation officers had a good-faith belief that they had authority to search.

Appellant then testified at the hearing. She stated that she was cooking breakfast when the probation officers knocked on her door. She stated that she told them that Crow was not at home. She testified that she told them to wait but that they came inside anyway. Appellant stated that they began to search and started

asking questions about what they found. She said that they told her to sit down and would not let her get up from where she sat.

■ In reviewing the trial court's denial of a motion to suppress evidence, we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *See Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003). The trial court's ruling will not be reversed unless it is clearly against the preponderance of the evidence. *See Scott v. State*, 347 Ark. 767, 67 S.W.3d 567 (2002). We will defer to the trial court in assessing the credibility of witnesses. *Id.*

· ■■ A warrantless entry into a private home is presumptively unreasonable, and the burden is on the State to prove the warrantless activity was reasonable. *See Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999). A warrantless entry made with consent does not violate the Fourth Amendment; however, consent to a warrantless search of one's home must be given freely and voluntarily. *See id.* The State has a heavy burden to prove by clear and positive testimony that consent was freely and voluntarily given. *Id.* Consent cannot be presumed from proof that a person merely acquiesced to police authority nor from an absence of proof that a person resisted police authority. *See id.*

Although it was not in the record, the State contends that Crow had executed a consent to search form pursuant to being placed on probation. In all three of her arguments on appeal, appellant points out that Crow's probation was illegally extended and that any consent to search on Crow's part ceased when his probationary period expired. The State essentially concedes that the revocation and subsequent extension of Crow's probation was invalid but contends that the search of Crow's residence, pursuant to what Rowlett believed to be a valid order of probation and consent to search, falls under the good-faith exception to the exclusionary rule set out in *United States v. Leon*, 468 U.S. 897 (1984). The State relies on a case involving a similar situation where a probationer's search waiver had expired. *See People v. Downing*, 33 Cal. App. 4th 1641 (1995), *cert. denied, Downing v. California*, 516 U.S. 1120 (1996). Citing *Leon, supra*, the court in *Downing* noted:

> Where . . . the search is later found to be invalid, as in this case where it was conducted pursuant to a probation condition or "consent" that had expired, *i.e.*, was nonexistent, at the time of the search, a Fourth Amendment violation is shown and the question thus becomes whether such constitutional violation is appropriately remedied by the application of the judicially created exclusionary rule which prohibits the admission at trial of the evidence obtained during the unlawful search.

*Id.* at 1650–51.

That case is distinguishable. There, a police officer received information that Downing was engaged in drug activity. The officer then ran Downing's name on the police department's "criminal history" computer log, which indicated that Downing was subject to a search waiver that was still in effect. The officer double-checked that information with a "Fourth Amendment Log" to verify that the waiver expired on the same date as listed in the police computer log. This procedure was in compliance with the police department's policy regarding verification of search waivers before conducting warrantless searches. When the officer found that the dates were the same, he believed the search waiver was valid. Although Downing told him prior to the search that he was no longer on probation, the officer conducted a search anyway. It was later determined that Downing's search waiver was, indeed, no longer valid and that there had been a computer error. At the suppression hearing, the court clerk who made the entry error testified as to how the error occurred. Downing presented the testimony of his probation officer and a person from the Probation Department records section. They testified that if the officer had called them, as many police officers do, they could have easily given him information about Downing's probation status. The appellate court held that the trial court had erred in granting Downing's motion to suppress because the officer acted in objectively reasonable good faith. The court further held that the officer was presented with facially valid computer information produced by the superior court and that the officer was not required to exhaust all avenues of investigation when he had no reason to question the computer information in front of him. Finally, the court held that to apply the exclusionary rule would not serve to promote its purpose of deterring unlawful police conduct.

■ In the case at bar, the search of appellant's residence was carried out by probation officers and not the police. As probation officers, they should have been in a better position to know the status of Crow's probation. The revocation and extension of Crow's probation was clearly an illegal sentence because Crow's probationary period had already expired. Here, there was no evidence as to what information the probation officers relied on in conducting a walk-through of the residence or, for that matter, whether they even consulted their records. While the State suggests that the probation officers relied on a consent to search form that Crow signed, that form is not in the record for our review to determine the nature of the consent. Moreover, there was no evidence as to what the probation officers believed regarding their authority. Even assuming that the good-faith exception applies under these circumstances, we cannot agree with the trial court's finding that the probation officers believed they had the authority to search and were acting in good faith with regard to the initial entry. There is simply no evidence to support that conclusion without speculating.

■ The State also contends that appellant had a diminished expectation of privacy in cohabiting with a probationer. Instead of pressing the issue as to whether appellant consented to the search, the State argues that, irrespective of appellant's consent or lack thereof, the probation officers were entitled to rely on the order of probation allowing them to do a walk-through search of the residence. Crow, however, was not a probationer at the time of the search. Because his consent was no longer a valid basis for the search, the probation officers had to have had appellant's consent to search. It is doubtful that the State could have met its burden of proving that any consent by appellant was freely and voluntarily given when she was faced with three probation officers who alleged that they had the authority to search the residence because Crow was a probationer. Even assuming that appellant specifically invited the probation officers inside her home instead of merely acquiescing to their entry, there was no testimony that appellant consented to the subsequent search.

■ Because of the lack of evidence as to the probation officers' good faith in their initial entry of residence, we cannot say that the probation officers were entitled to rely on Crow's consent given in conjunction with a probation order that had expired.

Accordingly, we hold that the trial court erred in denying appellant's motion to suppress.

Reversed and remanded.

ROBBINS and VAUGHT, JJ., agree.