Cite as 2021 Ark. App. 424

# ARKANSAS COURT OF APPEALS
DIVISION II
No. CR–21–216

| | | |
|---|---|---|
| JAMIE ANN ASHBY | | **Opinion Delivered** November 3, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CR-20-101] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BARBARA ELMORE, JUDGE |
| | | |
| | | AFFIRMED |

**RITA W. GRUBER, Judge**

Jamie Ashby appeals from the Lonoke County Circuit Court's order convicting her of possession of methamphetamine or cocaine with intent to deliver, possession of drug paraphernalia, and misdemeanor possession of a Schedule IV or V controlled substance. Her sole point on appeal is that the circuit court erred in denying her motion to suppress. We affirm Ashby's convictions.

On January 10, 2020, Officer Brandon Ray of the Lonoke Police Department noticed a defective taillight on Ashby's car and initiated a traffic stop. Lisa Ford was driving the car at the time, and Ashby was in the passenger seat. Ford had an outstanding arrest warrant and was taken into custody by Officer Ray's partner. Officer Ray spoke with Ashby and obtained her information to "run [it] through dispatch." The dispatcher reported that Ashby had a search waiver on file. Officer Ray then confirmed with Ashby that the car was her vehicle and asked if she minded if he searched it. He informed her that she had a search

waiver on file. She responded "yeah" to his request, adding, "I mean, there's nothing I can do to stop it so . . . ." Officer Ray searched the vehicle and found a small multicolored bag on the backseat floorboard. The bag contained drug paraphernalia, a baggie of methamphetamine, two syringes loaded with a clear liquid, an elastic-band tourniquet, and miscellaneous pills.

Ashby filed a motion to suppress the evidence discovered in her car, arguing that the search was an illegal, warrantless search in violation of the Fourth Amendment to the United States Constitution and article 2, section 10 of the Arkansas Constitution.[1] She attached documentation she said demonstrated that her suspended sentence ended before she was arrested in January 2020 and that the conditions of her suspended sentence had not contained a search waiver. She argued that the court should grant her motion to suppress because the search was conducted without a warrant, and the exception relied on—a search waiver—was erroneous.

The court did not address the motion until trial. At trial, Ashby introduced the sentencing order and the conditions of the suspended sentence, which did not include a search waiver. The court denied the suppression motion giving the following explanation:

> I don't know exactly what she told him, whether she told him she was on a suspended imposition of sentence or what, but he told her he—that she had [a] waiver on file, and she said, "Okay, yeah." Had she said, "No, I don't have a waiver on file," or had she said something else, then I would say that he didn't do it in good faith. But what he did was search the vehicle in good faith because he thought there was a waiver on file. She didn't tell him she didn't have a waiver on file. What she said was, Okay, yeah." So under good faith, I'm going to allow the search.

---

[1]We presume Ashby intended to cite article 2, section 15 of the Arkansas Constitution regarding unreasonable searches and seizures. In any case, her arguments to the circuit court and to us concern the Fourth Amendment and not the Arkansas Constitution.

The bench trial continued, and the court found Ashby guilty of possession of methamphetamine with the purpose to deliver, possession of drug paraphernalia, and misdemeanor possession of a controlled substance. Her only argument on appeal is that the circuit court erred by denying her motion to suppress the evidence. She contends that there was no valid search waiver and thus no consent for the search and that Officer Ray did not have a good-faith basis to search.

On review of a circuit court's denial of a motion to suppress evidence, we conduct an independent inquiry based on the totality of the circumstances, evaluating findings of historical facts for clear error. *Wilson v. State*, 2014 Ark. 8. We give due weight to inferences drawn by the circuit court, and we will reverse the circuit court only if the ruling is clearly against the preponderance of the evidence. *Thomas v. State*, 2020 Ark. 154, at 9, 598 S.W.3d 41, 46.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). A warrantless search of a person is reasonable only if it falls within one of these recognized exceptions. *Parks v. State*, 2020 Ark. App. 267, at 4, 599 S.W.3d 382, 384 (citing *Missouri v. McNeely*, 569 U.S. 141 (2013)). One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search

that is conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Thus, where there is consent, there is no Fourth Amendment violation.

Here, the circuit court made no finding that Ashby had consented to the search or that there was a valid search waiver outstanding at the time of the traffic stop. Rather, the circuit court denied Ashby's motion to suppress and her request to exclude the evidence because it determined that Officer Ray had acted in good faith in relying on the information regarding the search waiver. Generally, when evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule precludes its use in a criminal proceeding. *Weeks v. United States*, 232 U.S. 383 (1914). The prime purpose is to deter future unlawful police conduct. *Parks*, 2020 Ark. App. 267, at 8, 599 S.W.3d at 87.

However, the United States Supreme Court has adopted good-faith exceptions to the exclusionary rule where application of the rule does not advance its remedial purpose. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). In *United States v. Leon*, 468 U.S. 897 (1984), the Court held that the exclusionary rule does not apply when the police conduct a search in "objectively reasonable reliance" on a warrant later held invalid. *Id.* at 922. The Court noted that where the police officer's conduct is objectively reasonable, excluding evidence would not further the ends of the exclusionary rule because "the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty." *Id.* at 920.

The Court applied a similar rationale in *Davis v. United States*, 564 U.S. 229 (2011), holding the exclusionary rule inapplicable when the police conduct a search in objectively reasonable reliance on binding appellate precedent. The Court extended the good-faith

4

exception to searches conducted in objectively reasonable reliance on statutes subsequently declared to be unconstitutional in *Krull*, *supra*. The Court also held that the good-faith exception applied when police officers seized evidence in reliance on incorrect computer records due to clerical errors of court employees. *Arizona v. Evans*, 514 U.S. 1 (1995). In *Evans*, Phoenix police found marijuana during a routine traffic stop after their patrol car's computer indicated the defendant had an outstanding warrant for his arrest. *Id.* at 4. It was later determined that the warrant had been quashed before the arrest but had not been reported to the police department by court personnel. *Id.* at 5. The Court held there was no indication that the officer was not acting objectively reasonably when he relied on the police computer record and held it fit within the good-faith exception to the exclusionary rule. *Id.* at 15–16.

Finally, the Court extended the good-faith exception to a situation similar to that in *Evans* but where the error was not made by court personnel but by police personnel. In *Herring v. United States*, 555 U.S. 135 (2009), police officers, relying on another county's warrant clerk and computer database, arrested Herring and conducted a search incident to that arrest resulting in Herring's arrest for possession of methamphetamine and felon in possession of a firearm. It was later determined that the warrant was not valid and should not have appeared in the computer database. The Court affirmed the denial of Herring's motion to suppress, holding that the good-faith exception to the exclusionary rule applied. The court distinguished errors that were merely negligent from those that were reckless or deliberate. *Id.* at 140. In holding that these types of searches fall within the good-faith exception, the Court reasoned:

To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.

. . . .

The pertinent analysis of deterrence and culpability is objective, not an "inquiry into the subjective awareness of arresting officers," Reply Brief for Petitioner 4–5. See also post, at 710, n. 7 (GINSBURG, J., dissenting). We have already held that "our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal" in light of "all of the circumstances." *Leon*, 468 U.S., at 922, n. 23. These circumstances frequently include a particular officer's knowledge and experience, but that does not make the test any more subjective than the one for probable cause, which looks to an officer's knowledge and experience, *Ornelas v. United States*, 517 U.S. 690, 699–700 (1996), but not his subjective intent, *Whren v. United States*, 517 U.S. 806, 812–813 (1996).

. . . .

If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation. We said as much in *Leon*, explaining that an officer could not "obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." *Id.*, at 923, n. 24 (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 568 (1971)). Petitioner's fears that our decision will cause police departments to deliberately keep their officers ignorant, Brief for Petitioner 37–39, are thus unfounded.

. . . .

Petitioner's claim that police negligence automatically triggers suppression cannot be squared with the principles underlying the exclusionary rule, as they have been explained in our cases. In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, *e.g.*, *Leon*, 468 U.S., at 909–910, we conclude that when police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not "pay its way." *Id.*, at 907–908, n. 6. In such a case, the criminal should not "go free because the

constable has blundered." *People v. Defore*, 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926) (opinion of the Court by Cardozo, J.).

*Herring*, 555 U.S. at 144–48.

We now turn to Ashby's arguments on appeal. She first argues that the waiver was not valid, and as a result, there was no consent for the search. The circuit court did not rule on this issue; instead, the court denied Ashby's motion to suppress the evidence because it found that Officer Ray had acted in good faith in relying on the dispatched information. Thus, we will assume for the sake of argument that there was no consent for the search and turn to Ashby's argument that Officer Ray did not have a good-faith basis to search her car. She cites *Bogard v. State*, 88 Ark. App. 214, 197 S.W.3d 1 (2004), in support of her argument.

In *Bogard*, probation officers made a routine visit to probationer Scott Crow's residence. Crow was married to, and lived with, Barbara Bogard. When the probation officers arrived at the home, Bogard answered the door and told them Crow was at work. She then excused herself to monitor breakfast that was cooking on the stove. The testimony differed with regard to exactly how the officers came inside the home, but they did a "walk through" of the residence and discovered a baggie containing residue on the bed. They then conducted a "full search" after calling their supervisor and discovered pipes, pills, counterfeit bills, baggies containing white powder residue, and other paraphernalia. The officers testified that Bogard let them inside after they told her they were there to do a home visit on Crow. Bogard testified that she told the officers Crow was not home and to wait outside while she finished cooking. She said they came in, began to search, and asked her questions about what they had found. Bogard, not Crow, was charged with various offenses on the basis of

the search and moved to suppress the evidence. Crow's probationary period had actually expired, which the State conceded, but the State argued that the probation officers had acted in good faith. The circuit court denied Bogard's motion to suppress on the basis of good faith. We reversed and remanded, holding that there was no evidence of good faith. We noted that the search was not conducted by police officers but by probation officers who should have known the status of Crow's probation; there was no evidence in the record as to what information the probation officers relied on in conducting the walk through of the residence or, "for that matter, whether they even consulted their records," *Bogard*, 88 Ark. App. at 221, 197 S.W.3d at 4; and while the State suggested that the officers relied in good faith on a consent-to-search form signed by Crow, there was no evidence of such a form in the record. Finally, there was no testimony that Bogard consented to the full search, even assuming she invited them into the home.

Ashby's reliance on *Bogard* is misplaced. First, *Bogard* involved the search of a home by probation officers on the basis of authority to supervise a probationer who was not Bogard. Ashby was searched after a legitimate traffic stop by police officers relying on information specific to Ashby. There is nothing in the record to suggest Officer Ray acted other than reasonably or that the police department had experienced systemic problems with their dispatch system in the past. Moreover, *Bogard* was decided before the United States Supreme Court decided *Herring*, which we hold is persuasive here.

The Court made it clear in *Herring* that the "exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at 147. The record in this case does not suggest

that such conduct occurred here. Officer Ray pulled Ashby's vehicle over for a defective tail light. He ran a routine check of her license resulting in a report that she had a search waiver on file. When he questioned her about it, she told him she was not on probation but on a suspended sentence. She did not indicate that the suspension had expired. Although the information provided to Officer Ray by dispatch appears to have been incorrect, there is no evidence that this was due to deliberate, reckless, grossly negligent conduct or recurring or systemic negligence by anyone. When Officer Ray informed Ashby about the search waiver and that he wanted to search her car, she did not object or alert him that his information was incorrect. Rather, she replied "yeah," adding, "I mean, there's nothing I can do to stop it so . . . ." Giving due weight to the inferences drawn by the circuit court, we hold that its denial of Ashby's motion to suppress is not clearly against the preponderance of the evidence.

Affirmed.

HARRISON, C.J., agrees.

VIRDEN, J., concurs.

**BART F. VIRDEN, Judge, concurring**. I agree that the outcome of this case is controlled by the United States Supreme Court's holding in *Herring v. United States*, 555 U.S. 135 (2009). I write separately only to express concern that the good-faith exception is inching toward becoming the rule instead of the "exception." By requiring some sort of showing of systemic recklessness or intentional misleading in obtaining the information relied on, I feel we are getting dangerously close to shifting the burden of proof regarding warrantless searches to the defendant. This results in a violation of the long-standing

principle that, generally, when evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule precludes its use in a criminal proceeding. *Weeks v. United States*, 232 U.S. 383 (1914).

Accordingly, I concur.

*Omar Greene*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Adam Jackson*, Ass't Att'y Gen., for appellee.